UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

WOOD AND BRICKS, LLC

    *Plaintiff*,

    *v.*

TD DEVELOPMENT, LLC, and TODD CLIFFORD,

    *Defendants*.

No. 3:16-cv-123 (MPS)

## ORDER

In this contract dispute, the plaintiff Wood and Bricks, LLC ("Wood") sues TD Development, LLC ("TD Development") and its sole member, Todd Clifford ("Clifford" and collectively, the "defendants"). (*See generally* ECF No. 27.) This order addresses the only claim currently scheduled for trial, Wood's claim against Clifford for tortious interference, and, finding it legally insufficient, DISMISSES the claim.

This case has a convoluted procedural history, but I recount here only that part of it necessary to explain this order. Wood filed a verified complaint in Superior Court, Judicial District of Hartford, against the defendants alleging claims for (1) breach of contract against TD Development and (2) tortious interference of contract against Clifford. (ECF No. 1-4 at 3–10.) Defendants removed the case to this Court (ECF No. 1), and Clifford subsequently moved to dismiss the tortious interference count against him. (ECF No. 20.) Clifford argued that a corporate officer acting within the scope of his authority who causes his company to terminate a contract is not functionally separate from the corporate entity, and thus a claim for tortious interference may not lie against Clifford as TD Development's sole member. (ECF No. 20-1 at 3–5.) However,

1

after this Court issued an "amend now or never" order in response to the motion, Wood filed an amended complaint. (ECF Nos. 21, 27.) The amended complaint again asserted claims for breach of contract against TD Development and tortious interference with contract against Clifford, but also added claims of conversion, statutory theft, unfair trade practice, and foreclosure of a mechanic's lien against TD Development. (ECF No. 27.) Instead of renewing their motion to dismiss, Defendants simply answered the amended complaint. (ECF No. 30). Neither party filed motions for summary judgment, and the parties filed their Joint Trial Memorandum on November 15, 2018. (ECF Nos. 201, 214.) On December 3, 2018, Wood filed a motion for default judgment on all of its claims against TD Development. (ECF No. 218 at 7–9.) Jury selection is now scheduled for January 9, 2019. (ECF No. 217.) Accordingly, and as the parties state in their Joint Trial Memorandum, "the only claim remaining for trial in this action is Wood's single claim against Clifford for tortious interference." (ECF No. 214 at 1.) Based on arguments raised by Clifford in his original motion to dismiss and, now, the joint trial memorandum (ECF No. 214 at 6–7), the Court ordered Wood on December 3, 2018 to show cause within 10 days, or by December 13, 2018, why that claim should not be dismissed for failure to state a claim. (ECF No. 217.) Wood failed to file any response by the date of this order.[1]

"The district court has the power to dismiss a complaint *sua sponte* for failure to state a claim . . . ." *See Leonhard v. United States*, 633 F.2d 599, 609 n.11 (2d Cir. 1980). I take the plaintiff's factual allegations in the complaint "to be true and draw[] all reasonable inferences in

---

[1] For this reason, I would also dismiss Wood's claim against Clifford under Fed. R. Civ. P. 41(b), as I specifically warned that "[f]ailure to file a response will result in dismissal of this action." (ECF No. 217.) In addition, chambers received an unsolicited, *ex parte* e-mail from Clifford on December 14, 2018 informing the Court about a Rule 12(b)(6) motion he was intending to file. In light of this ruling, the Court will not consider this correspondence.

2

the plaintiff's favor." *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A court need not accept legal conclusions as true and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* I consider "only the complaint, any written instrument attached to the complaint as an exhibit, any statements or documents incorporated in it by reference, and any document upon which the complaint heavily relies." *In re Thelen LLP*, 736 F.3d 213, 219 (2d Cir. 2013) (citation and subsequent history omitted).

Under Connecticut law, "[a] claim for intentional interference with contractual relations requires the plaintiff to establish: (1) the existence of a contractual or beneficial relationship; (2) the defendant's knowledge of that relationship; (3) the defendant's intent to interfere with the relationship; (4) that the interference was tortious; and (5) a loss suffered by the plaintiff that was caused by the defendant's tortious conduct." *Rioux v. Barry*, 283 Conn. 338, 351 (2007). Nonetheless, where the defendant is an agent of a contractual party, the plaintiff must plead that defendant acted outside the scope of his duty to assert a claim for tortious interference in the agent's individual capacity:

> [I]t is well-settled that the tort of interference with contractual relations only lies when a third party adversely affects the contractual relations of two *other* parties. There can be no intentional interference with contractual relations by someone who is directly or indirectly a party to the contract. The general rule is that the agent may not be charged with having interfered with a contract of the agent's principal. An agent acting legitimately within the scope of his authority cannot be held liable for interfering with or inducing his principal to breach a contract between his principal and a third party, because to hold him liable would be, in effect, to hold the corporation liable in tort for breaching its own contract. In other

3

words, an exception to the general rule applies if the agent did not act legitimately within his scope of duty but used the corporate power improperly for personal gain.

*Metcoff v. Lebovics*, 123 Conn. App. 512, 520–21 (2010) (quotation marks, internal citations, and alterations omitted; emphasis in original). In other words, where a plaintiff fails to allege facts showing that a contractual party's agent acted outside of the scope of his duty, the agent's actions are not distinct from those of the contractual party and thus the common law bars a tortious interference claim against the agent in his individual capacity. *See id.*[2]

The Amended Complaint alleges that Clifford is the sole member of TD Development. (ECF No. 27 at ¶ 2.) In the breach of contract count, Wood alleges that TD Development breached the June 16, 2015 Demolition Management & Salvage Agreement (the "Agreement") between Wood and TD Development by "refusing to issue (and/or refusing to allow its abatement contractor to issue) clearances so that [Wood] could continue the demolition, generate salvage and salvage proceeds" on certain buildings to be demolished under the Agreement, and also by issuing a written notice purporting to terminate the Agreement and "directing [Wood] to 'to leave the main property and the office building across the street immediately or risk facing trespass charges.'" (ECF No. 27 at ¶¶ 4–5, 12, 14.) The breach of contract count does not include any allegations concerning Clifford's involvement. (*Id.* at 1–6.) The tortious interference count incorporates those breach of contract allegations and adds further that "Clifford caused TD to take the wrongful actions detailed above because of a personal motive to profit himself and/or to satisfy personal

---

[2] "In determining whether an employee has acted within the scope of employment, courts look to whether the employee's conduct: (1) occurs primarily within the employer's authorized time and space limits; (2) is of the type that the employee is employed to perform; and (3) is motivated, at least in part, by a purpose to serve the employer." *Harp v. King*, 266 Conn. 747, 782–83 (2003).

feelings of animus toward plaintiff and its principal . . . ," resulting in damage to Wood. (ECF No. 27 at 10–11.)

The amended complaint fails to state a claim for tortious interference against Clifford. It alleges that Wood and TD Development were the parties to the Agreement, and that Clifford was the sole member of TD Development. (ECF No. 27 at 1 ¶ 2, 2 ¶ 4.) However, the amended complaint does not allege what specific actions Clifford took to cause a breach, or whether Clifford took such actions as an agent of TD Development—but given the absence of more specific allegations, it is most plausibly read as such.[3] *Cf. Wellington Sys., Inc. v. Redding Grp., Inc.*, 49 Conn. App. 152, 168–69 (1998) (affirming grant of summary judgment on tortious interference claim against principal stockholders because plaintiff "failed to allege or to offer any evidence that [stockholders] were not acting legitimately within the scope of their authority"). The amended complaint does not allege any facts from which the Court could conclude that Clifford acted outside the scope of his agency in causing TD Development to breach the Agreement, so as to impose individual tort liability on Clifford under the exception to the common law bar. *See Metcoff*, 123 Conn. App. at 523 (affirming dismissal of tortious interference claim where plaintiff made "no allegations that" decision to refuse to issue stock "[was] concealed or made at a time, place or manner other than in the course of the business normally transacted by corporate management"). In the absence of more specific allegations, permitting Wood's claim to proceed against Clifford would have the effect of vitiating liability protections for members of an LLC under Connecticut law. *See, e.g.*, Conn. Gen. Stat. § 34-251a(a) ("A member or manager is not

---

[3] If I were instead to construe Wood's tortious interference claim as based on Clifford's *not* acting as an agent of TD Development, such a claim would likewise fail for the complete absence of non-conclusory allegations concerning Clifford's individual conduct.

personally liable, directly or indirectly . . . for a debt, obligation or other liability of the company *solely* by reason of being or acting as a member or manager.") (emphasis added). Although Wood's amended complaint included an additional allegation that Clifford caused TD Development to "take the wrongful actions [the two breaches of contract] . . . because of a personal motive to profit himself and/or to satisfy personal feelings of animus toward plaintiff and its principal," such conclusory allegations of improper motive alone cannot remove the alleged wrongful actions from the scope of Clifford's agency. (ECF No. 27 at 10 ¶ 22.) *See Metcoff*, 123 Conn. App. at 523 (rejecting tortious interference claim that alleged "sinister motivations [about] conduct taken in the normal course of corporate management.").[4] Because, based on the complaint, Clifford's actions and those of TD Development appear indistinguishable, the tortious interference claim fails as a matter of law. *Cf. Harp*, 266 Conn. at 776 (2003) ("A basic principle of agency is that a corporation can act only through the authorized acts of its corporate directors, officers, and other employees and agents.").

---

[4] Further, because Clifford was allegedly TD Development's sole member, it is hard to see how "a personal motive to profit himself" could be outside the scope of his agency or otherwise improper.

Accordingly, Wood has failed to plead a cognizable claim of tortious interference against Clifford, TD Development's sole member, for allegedly causing TD Development to breach the Agreement. This claim is therefore DISMISSED with prejudice, and the pre-trial conference set for January 3, 2019 and the jury selection set for January 9, 2018 are hereby CANCELLED. The Court will rule on the pending motion for default judgment against TD Development in due course.

IT IS SO ORDERED.

/s/
Michael P. Shea, U.S.D.J.

Dated: Hartford, Connecticut
December 17, 2018